J-S29017-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.M., A MINOR<br>APPEAL OF S.C., MOTHER | : | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3471 EDA 2017 |

Appeal from the Dispositional Order September 22, 2017
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0002470-2017,
FID: 51-FN-001733-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: E.M., A<br>MINOR | : | IN THE SUPERIOR COURT OF<br>PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: S.C., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 3473 EDA 2017 |

Appeal from the Dispositional Order September 22, 2017
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0002544-2015,
FID: 51-FN-001733-2015

BEFORE:   PANELLA, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY MURRAY, J.:                    **FILED JUNE 13, 2018**

In these consolidated appeals, S.C. (Mother), appeals from the dependency orders finding that she posed a grave threat to her two sons, J.M., born in October 2004, and E.M., born in March 2003 (collectively, Children), and terminated her visits with Children.  Upon review, we affirm.

_____
* Former Justice specially assigned to the Superior Court.

Mother and E.M. (Father) are the biological parents of Children. Prior to the underlying dependency actions, Mother and Father were opposing parties in custody litigation involving the Children. On November 29, 2016, the trial court entered an order granting sole physical and legal custody of Children to Father; the trial court awarded Mother two hours of supervised visitation each week at the court nursery. Order, 11/29/16, at 1.

On June 6, 2017, Father entered a one-year residential center for drug and alcohol treatment and left Children in the care of his wife (Stepmother). N.T., 9/22/17, at 12-13. The next day, Mother, in violation of the custody order, abducted Children from their school. *Id.* at 13-15. Stepmother sought the Children's return, and Mother returned Children to Stepmother later that day. *Id.* at 15. On June 16, 2017, Mother abducted the Children again – this time from Stepmother's home. *Id.* at 16-18. At the time, Bernice Guetant, an investigative caseworker with Philadelphia Department of Human Services (DHS),[1] attempted to obtain an order for protective custody (OPC) of the Children because, *inter alia*, Mother and Children were residing with Mother's paramour, who had previously abused the Children. However, Ms. Guetant's supervisor denied her request on the basis that the Children were allegedly residing with their maternal grandmother, and the matter was one of "custody issues versus dependency issues." *Id.* at 19. Nonetheless, Ms. Guetant "did

---

[1] DHS was involved with Mother and two of her other children. Mother's rights to those two other children were involuntarily terminated in 2016. N.T., 9/22/17, at 19, 22.

a safety plan with maternal grandmother that specifically outlined that mom was to have supervised contact with the children; the children were not to leave with mom." *Id.* at 20.

On September 12, 2017, Ms. Guetant discovered the Children living with Mother and was thus able to obtain an OPC for Children with a temporary commitment to DHS. *Id.* at 21. On September 14, 2017, the trial court conducted a shelter care hearing and ordered that Children's placement remain with DHS.

On September 19, 2017, DHS filed a dependency petition and the trial court held an adjudicatory hearing on September 22, 2017, where Ms. Guetant testified as the sole witness. Mother and Father did not testify or present any evidence.[2] At the conclusion of the hearing, the trial court adjudicated Children dependent and found Mother to be a "grave threat." *Id.* at 28. Accordingly, the trial court terminated Mother's visits and issued protective orders prohibiting her from having any contact with Children.

On October 21, 2017, Mother filed timely notices of appeal along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on January 31, 2018.

---

[2] Father remained in the one-year rehabilitation program and did not attend the hearing, but was represented by counsel. *See*, *e.g.*, N.T., 9/22/17, at 12-13. Mother attended the hearing, but at the advice of her counsel, did not testify. *Id.* at 36.

On appeal, Mother raises the following issues:

1.    Did the [t]rial judge rule in error that Mother was a grave threat to [Children] and therefore suspended Mother's visits with [Children]?

2.    Did the trial judge rule in [error] granting a stay away order/no contact order between Mother and [Children]?

Mother's Brief at 4.

Our Supreme Court has set forth the standard of review for dependency cases as follows:

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

In dependency cases, the standard to measure visitation depends on the goal mandated in the family service plan. *In re C.B.*, 861 A.2d 287, 293 (Pa. Super. 2004), *appeal denied*, 871 A.2d 187 (Pa. 2005). "Where . . . reunification still remains the goal of the family service plan, visitation will not be denied or reduced unless it poses a grave threat." *Id.* (quoting *In re B.G.*, 774 A.2d 757, 760 (Pa. Super. 2001)). If the goal is no longer reunification of the family, then visitation may be limited or denied if it is in the best interests of the child. . . ." *Id.*

It should be understood that the difference just noted is real and not merely semantical. As [*In re C.J.*, 729 A.2d 89 (Pa. Super. 1999),] points out, in considering the matter of visitation, more than just the child's best interests are at issue; there is also the constitutionally protected interest of a parent to visitation that

- 4 -

must be considered. *See Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). Moreover, if the parents' right to visitation is injected into the equation, then, logically speaking, a result that is strictly in the child's best interests might have to yield somewhat to accommodate the parents' constitutionally protected right where the two are not the same.[2] In other words, where the two are seen as in conflict, both interests would have to be weighed and a result which equitably balances the two must be reached. If this were not the case there would be no need for a different standard, as the "best interests of the child" standard would apply regardless of the underlying circumstances and the interest of the parents would play no part in the decision at all.

[2] Of course, ideally, continued parental visitation would be in the child's best interests.

*B.G.*, 774 A.2d at 760 (footnote in original). In *In re C.B.*, this Court explained the "grave threat" standard as follows:

The "grave threat" standard is met when the evidence clearly shows that a parent is unfit to associate with his [or her] . . . children; the parent can then be denied the right to see them. This standard is satisfied when the parent demonstrates a severe mental or moral deficiency that constitutes a grave threat.

861 A.2d at 294 (internal citations and some quotation marks omitted).

Here, the trial court concluded that Mother posed a grave threat to the Children. In support of its conclusion, the trial court found: (1) Mother's parental rights had been involuntarily terminated to two other children; (2) Mother abducted Children on two occasions in violation of a custody order; (3) Mother's history of breaching court orders and interfering in Children's daily lives caused Children significant emotional and physical harm; and (4) there were no practical alternatives to visitation. Trial Court Opinion, 1/31/18, at 4-5; N.T., 9/22/17, at 37-38. In reaching its conclusions, the trial court

credited the testimony of Ms. Guetant. *See* Trial Court Opinion, 1/31/18, at 4-5; N.T., 9/22/17, at 37.

On appeal, Mother argues that the trial court erred in finding her to be a grave threat to Children, terminating her supervised visits, and issuing no contact orders with Children. Specifically, Mother contends that there was no evidence establishing that she physically harmed Children or that she posed a threat to the Children's psychological well-being. Mother's Brief at 5-6.

Based upon our review of the certified record, we conclude that the trial court did not abuse its discretion in finding that Mother posed a grave threat to Children. Ms. Guetant testified that Mother had a lengthy history of drug and alcohol abuse and criminal activity. N.T., 9/22/17, at 9, 21-24, 30. Ms. Guetant also expressed concern that Mother has a general propensity for placing Children at risk for harm. *Id.* at 22-28. Notably, Ms. Guetant testified that Mother refused to return Children to Stepmother's custody despite being confronted by the police, and instead, resided with Children in the home of her paramour, who had previously abused Children. Mother did so despite an order of court prohibiting contact between Children and Mother's paramour.

Likewise, Ms. Guetant noted that Mother offered conflicting stories to DHS as to why she abducted Children, and additionally appeared intoxicated during her interactions with DHS. *Id.* at 30. Moreover, Ms. Guetant explained that Mother's behavior towards Children interferes with their normal routines. She explained:

> [Mother] is calling the kids constantly. They get out of school, she's on the phone. They're eating dinner, she's on the phone. So she's kind of interfering with their normal routines.
>
> She told the children that they were going to be in court today and that they need to be on the phone. They were in school calling me, asking me are they going to be present in court. . . I just feel like she's kind of interfering with their well-being.

*Id.* at 23-24. Ms. Guetant opined that Mother's behavior posed a grave threat to Children and recommended that Children be adjudicated dependent. *Id.*

Upon review, the record confirms that Mother exposed Children to significant physical and emotional harm, and her parenting deficiencies constitute a grave threat to the welfare of the Children. *See In re C.B.*, 861 A.2d at 294 (holding that grave threat standard is satisfied when the evidence clearly shows that a parent is unfit to associate with her children) (citation omitted). After Mother abducted the Children, they resided with Mother's paramour, a known abuser, in an environment where Mother abused drugs and alcohol and engaged in criminal activity. N.T., 9/22/17, at 21-22. For example, Mother was arrested on charges of forgery and tampering with public records the day before DHS obtained its OPC. *Id.* at 22, 35.

The trial court stated that Mother is "not capable of safely caring for these children", and determined that any visits with Mother, supervised or unsupervised, posed a significant risk of emotional and psychological harm to Children. *Id.* at 38. These findings are supported by the record, and it is well settled that we many not disturb the trial court's findings of fact and determinations regarding credibility. *In re R.J.T.*, 9 A.3d at 1190.

Accordingly, we affirm the trial court's dependency orders terminating Mother's visitation and the protective orders prohibiting her from having any contact with Children, based on its finding that Mother posed a grave threat to Children.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/13/18